**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**JAMES VIERA**

    **VS**

**BANK OF NEW YORK MELLON AS TRUSTEE FOR THE**
**CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE**
**LOAN TRUST 2005-86CB MORTGAGE PASS-THROUGH**
**CERFTIFICATES, SERIES 2005-86CB,**
**BAYVIEW LOAN SERVICING, LLC**

## COMPLAINT

Plaintiff, by his attorney, complains of Defendants as follows:

1.    Plaintiff is a resident of State of Rhode Island with an address of 15 Cedar Avenue,  East Providence, Rhode Island.  He resides at and owns this real estate, which is a one family residential home.  His ex-wife, Jane Viera also is an owner of this property.  She no longer lives in Rhode Island. She was not a signer of the mortgage note, but was only a mortgagor and was not a borrower.

2.    Mortgage Electronic Registration Systems, Inc., ("MERS"), is a Delaware Corporation.

3.    Plaintiff  executed a mortgage to MERS as Nominee for Shamrock Financial Corporation  on December 8, 2005.  A copy is attached as Exhibit A.

4.    Defendant,  Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB ("Bank of New York Mellon")  claims to be the owner  of his mortgage.

5.    Bayview Loan Servicing, LLC ("Bayview") is a limited liability company, organized pursuant to the laws of Delaware. It is a debt collector and claims to be a loan servicer for his mortgage. At the time it

1

began servicing this mortgage loan, my loan was delinquent and Bayview treated it as if it were in default.

6.     Michienzie & Sawin, LLC  ("M&S") has scheduled a foreclosure sale for Plaintiff's home on November 13, 2017  at 2:00 PM. Plaintiff has not received a Notice of Default, which was mailed to him in the form required by the terms of  his mortgage.

7.     Neither BONY nor Bayview have sent Plaintif a notice pursuant to the provisions of paragraph 22 of his mortgage.  Plaintiff has never been sent a  default notice, which complied with the terms of his mortgage  from the owner of the note or mortgage.

8.     Before an acceleration of the loan was declared, the Lender, its assignee  or a servicer acting on behalf of the owner of the mortgage was required to send Plaintiff a notice to his home address which specified:

   a.     the default;

   b.     the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

   c.     that failure to cure the default on or before the date specified in the Notice may result in the acceleration and sale of Plaintiffs' home

   d.     the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

9.     Paragraph 22 of his mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

**Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The  notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that  failure to cure the default on or before the date specified in the notice  may result**

**in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a Court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

10.     Plaintiff has never received an acceleration notice as required by the terms of his mortgage. No acceleration notice has been sent to him.

11.     The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage. There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above.

12     Any alleged exercise of the statutory power of sale to him was defective because a default notice and an acceleration notice were never sent as required by paragraph 22 of the mortgage.

13.     The purported default notice sent to Plaintiff ("Exhibit B") was dated August 3, 2017 and sent to him by certified mail. This letter did not comply with the terms of the mortgage.

14.     This letter stated "Failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property."   However it also stated:

If the default, together with additional payments that subsequently become due is not cured by 09/07/2017, BLS will take steps to terminate your ownership interest in the property by a foreclosure proceeding or other action to seize the property.

15.      This notice also did not state a specific amount due to be cured by September 7, 2017. Instead it stated:

It is possible that after payments of the amounts detailed above there may be other fees still due and owing, including  but not limited to other fees, escrow advances or corporate advances that BLS paid on your behalf or advanced to your account.

16.     The notice also did state that the Plaintiff had the right to bring a court action to assert the non-existence of a default or any other defense of borrower to acceleration and sale.

17.     However this notice also stated that:

If you wish to dispute the delinquency , or if you dispute the calculation of amount of the delinquency and reinstatement amount, you may contact us by calling 1-800-771-0299.

18.     It also limited the rights of the Plaintiff in this notice by stating:

Unless you notify us within thirty days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid.

19.     The mortgage loan has not been accelerated by either defendant.

20.     Exhibit C is a copy of the October 16, 2017 periodic monthly mortgage statement sent to Plaintiff.

21.     This statement indicates that his mortgage loan has not been accelerated.

22.     At no time after August 4, 2017 did Plaintiff receive any letter which indicated that the mortgage loan was accelerated.

23.     Bayview never indicated that it was sending the default letter on behalf of the alleged owner of the mortgage loan.

24.     On October 5, 2017 Bayview mailed Plaintiff's attorney Exhibit D. This letter indicates that the owner of the mortgage loan was Bank of America 807-95, The Bank of New York Mellon, 101 Barclay Street, 8W, New York, NY 10286.

25.     In this same letter, Bayview claims to have sent Plaintiff a copy of his promissory note, which is attached as Exhibit E.  This note has been only endorsed by Shamrock Financial Corporation to  Countrywide Bank, N.A. There is no additional endorsement.

26.     Countrywide Bank, National Association was renamed Countrywide Bank, FSB on March 12, 2007 and was acquired by Bank of America, National Association on April 4, 2007.

27.     A copy of the institution search for the Federal Deposit Insurance Corporation is attached as Exhibit F.

28.     The amount stated for his arrearage was not an accurate statement of the amount necessary to cure the delinquency on his mortgage loan.

29.     This amount included $5728.29 in a corporate advance balance. However this amount included attorney fees for an attempted foreclosure sale noticed by Bayview's attorney after October 8, 2014 and before July 8, 2015 without having sent Plaintiff a Notice of Mediation as required by the provisions of R.I.G.L. 34-27-3.2.  These fees were charged to his mortgage loan account as follows:

January 9, 2015 for a total of $833.61
May 5, 2015                $300.00

30.    Bayview also included in the corporate advance balance legal fees for foreclosures without a default letter sent pursuant to the terms of his mortgage and without ever having sent an acceleration letter in the following amounts:

| | |
|---|---|
| October 3, 2013 | $300.00 |
| April 29, 2014 | $300.00 |
| April 30, 2013 | $410.00 |
| April 1, 2013 | $300.00 |
| January 15, 2013 | $325.00 |
| September 3, 2015: | $485.00 |
| November 3, 2015: | $300.00 |
| December 28, 2015 | $300.00 |
| February 4, 2016 | $2012.18 |
| May 25, 2016 | $300.00 |
| July 12, 2016 | $862.00 |
| July 14, 2016 | $325.00 |
| November 15, 2016 | $300.00 |

31.    No default letter was sent pursuant to the terms of the mortgage prior to any of these foreclosure charges.  In addition prior to these attempts to exercise the statutory power of sale, his loan has never been accelerated.

32.    In addition, every month since it obtained servicing in October 2012, Bayview has charged his mortgage loan account $14.00 for what it reserves to as property preservation fees, despite the fact that Plaintiff has been seeking a loan modification since 2012 and it knows that he lives in the property.

33.    These fees were neither reasonable nor necessary.

34.    On September 27, 2017, Plaintiff transmitted a facially complete loss mitigation application for a loan modification to Bayview Loan Servicing.  It received this application on September 27, 2017.

35.    Despite this receipt, it began advertising of a foreclosure sale after it received his application for loss mitigation.

36.    Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater

hardship in the absence of an order, which will not disserve the public interest if imposed.

36.     The failure of the Defendants to comply with the terms of the mortgage renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the statutory ability to conduct this foreclosure.

37.     Plaintiff lives in this property as his principal residence.

138     These facts demonstrate that Plaintiff has a substantial likelihood of success.  Likewise a foreclosure of his property by a party not entitled to foreclose on the property will cause him  irreparable harm, which hardship is greater than any hardship, which may be claimed by defendants.

40.     Such relief sought by Plaintiff will not disserve the public interest if imposed.

41.     Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed. The failure of the Defendant to comply with  the terms of the mortgage renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the  statutory ability. This demonstrates that Plaintiff has a substantial likelihood of success. Likewise a foreclosure of his property by a party not entitled to foreclose on the property, because it has no ownership  of the mortgage will cause Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by defendants. Such relief sought by Plaintiff will not disserve the public interest if imposed.

41.     Plaintiff is requesting that this Court Temporarily Restrain and Enjoin and Preliminarily Restrain and Enjoin Bank of New York Mellon as Trustee and Bayview Loan Servicing, LLC or any entity acting on their behalf from continuing any advertising of this foreclosure or taking any further action in regard to this foreclosure and from conducting a foreclosure sale on November 13, 2017 or  at any time until further Order of this Court.

42.     The attorney for the Defendants, Michienzie & Sawin, LLC ("M&S") has been notified of this action and has been sent copies of the documents filed in this case, including this Motion.

## COUNT I
## BREACH OF CONTRACT

43.     Paragraphs 1- 41 are incorporated by reference.

44.     Paragraph 22 of the mortgage provides that the Lender must send a notice of default which contains specific language as a condition precedent to acceleration and sale.

44.      Plaintiff never received any  default letter, which included language required by the terms of the mortgage from the lender or owner of the note or the mortgage or an agent indicating that it was acting on behalf of the lender or owner of the note and the mortgage.

45.     Nor was an acceleration letter ever sent to the Plaintiff.

46.     Due to this failure to comply with the terms of the mortgage, no entity was contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiff's property.

47.     This action constituted a breach of contract, resulting in damages to the Plaintiff, who hired an attorney to commence this case.

48.     Pursuant to Rhode Island Law and the terms of the mortgage and the Statutory Power of Sale can only be exercised if a mortgagee accelerates the mortgage after a proper default notice pursuant to the terms of the mortgage.

WHEREFORE, Plaintiff demands the following relief:

a.     Damages against Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB and Bayview Loan

Servicing, LLC for failure to comply with the terms of the mortgage.

b.  Damages against Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB and Bayview Loan Servicing, LLC for legal fees and actual damages arising from the breach of contract.

c.  Legal fees from Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB and Bayview Loan Servicing, LLC pursuant to the provisions of  R.I.G.L § 9-1-45.

d.  Damages for charges to her mortgage loan account which has been charged fees and costs which were not permitted without a valid  default notice and an acceleration notice.

e.  All other just and proper relief.

JAMES VIERA
By his Attorney

November 12, 2017

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT II

## VIOLATION OF THE COVENANT OF GOOD FAITH AND DEALING

49.  Paragraphs 1-48 are incorporated by reference.

50.    The mortgage contract between Plaintiff and the mortgagee and its successor or assignee contained an implied covenant of good faith and dealing between the parties so that the contractual obligation of the contract might be achieved.

51.    The mortgage contract in paragraph 22 incorporates the Rhode Island Statutory Power of Sale.

52.    The Statutory Power of Sale could only be invoked by sending Plaintiff the following documents:

    a.    A default letter pursuant to the term of the mortgage was required to be sent by the lender to the mortgagor at their home address

    b.    A subsequent acceleration letter from the lender to the Plaintiff was required to be sent after a default letter.

    c.    A notice of sale from the lender

53.    Bank of New York Mellon as Trustee and Bayview Loan Servicing, LLC violated the covenant of good faith and dealing by scheduling a foreclosure sale in violation of the terms of the mortgage by seeking to exercise the statutory power of sale without the lender having first sent a default notice to the Plaintiff, which contained language required by the terms of the mortgage.

54.    They also breached the covenant of good faith and dealing by not sending a subsequent acceleration notice on behalf of the lender pursuant to the terms of the mortgage.

55.    The failure to send a default letter and failure to send an acceleration notice pursuant to the terms of the mortgage were  actions taken contrary to the contractual and statutory obligations of the parties.

56.    As a result, Plaintiff has incurred the following damages:

    a.    Plaintiff has incurred the cost of filing this action in the form of filing fees and service fees, incurred in order to

stop the foreclosure, which was in violation of the terms of the mortgage.

b.      Plaintiff's mortgage loan account has been charged fees and costs which were not permitted without a valid default letter having being sent to her.

c.      Plaintiff has incurred damages for Plaintiff aggravation, humiliation, embarrassment, loss of privacy, strain on personal relationships, loss of enjoyment of life, sleepless nights, worry and anxiety. He has incurred stress with mail advising him that his home will be sold at a public auction.

d.      Plaintiff has incurred attorney fees and costs to obtain an injunction to stop the illegal foreclosure.

e.      Plaintiff has incurred attorney fees and costs for the prosecution of this action.

57.    The conduct of Bank of New York Mellon as Trustee and Bayview Loan Servicing, LLC were willful, wanton and reckless, warranting the imposition of punitive damages. They ignored the clearly stated terms of the mortgage, but instead went forward and sought to exercise the statutory power of sale without a valid default notice having been sent to the Plaintiff.

WHEREFORE, Plaintiff demands the following relief:

a.      Damages against Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB and Bayview Loan Servicing, LLC for failure to comply with the terms of the mortgage.

b.      Damages against Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB and Bayview Loan

Servicing, LLC for legal fees and damages arising from the breach of contract.

c.  Legal fees from Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB and Bayview Loan Servicing, LLC.

d.  Damages for charges to Plaintiff's mortgage loan account which has been charged fees and costs which were not permitted without a valid default notice.

e.  Actual damages attributable to the aggravation, humiliation, embarrassment, loss of privacy, strain on personal relationships, loss of enjoyment of life, sleepless nights, worry and anxiety and stress suffered by the Plaintiff.

f.  Damages for punitive damages

g.  All other just and proper relief.

JAMES VIERA
By his Attorney

November 12, 2017

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT III
## INJUNCTIVE RELIEF

58.  Paragraphs 1-57 are incorporated by reference.

59.   Plaintiff will be irreparably harmed if the foreclosure sale on November 13, 2017 occurs and his home is sold.

60.   Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

61.   The failure of the Defendants to comply with paragraph 22 of the mortgage renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability.  This demonstrates that Plaintiff has a substantial likelihood of success.

62.   Likewise a foreclosure of Plaintiff's  property by a party not entitled to foreclose on the property will cause Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by Defendants.

63.   Such relief sought by Plaintiff will not disserve the public interest if imposed.

64.   The failure of the Defendant to comply with paragraph 22 of the mortgage renders any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability. This demonstrates that Plaintiff has a substantial likelihood of success. Likewise a foreclosure of Plaintiff's property by a party not entitled to foreclose on the property will cause Plaintiff  irreparable harm, which hardship is greater than any hardship, which may be claimed by defendants. Such relief sought by Plaintiff will not disserve the public interest if imposed.

WHEREFORE, Plaintiff  demands that this Court:

a.   Grant a Preliminary Injunction Restraining and Enjoining Bayview Loan Servicing, LLC, Bank of New York Mellon as Trustee  for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB or any other entity acting on its behalf from conducting, advertising or continuing a  foreclosure

13

sale at 15 Cedar Avenue, East Providence, Rhode Island pending a hearing on a Permanent Injunction

b.      Grant a Permanent Injunction enjoining  Bayview Loan Servicing, LLC, Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB  or any other entity acting on its behalf from conducting, advertising or continuing a  foreclosure  sale at 15 Cedar Avenue, East Providence, Rhode Island until  further Order of this Court.

c.      Award the Plaintiff actual damages and compensatory damages and legal fees and costs against the Defendants for scheduling a foreclosure without complying the  terms of the mortgage

d.      Grant all other just and proper relief.


                                    JAMES VIERA
                                    By  his Attorney


November 12, 2017              /s/ John B. Ennis
                                    JOHN B. ENNIS, ESQ. #2135
                                    1200 Reservoir Avenue
                                    Cranston, Rhode Island 02920
                                    (401) 943-9230
                                    Jbelaw75@gmail.com


## COUNT IV
## VIOLATION OF THE RHODE ISLAND FAIR DEBT COLLECTION PRACTICES ACT

65.      Paragraphs 1-64 are incorporated by reference.

66.      At the time that Bayview Loan Servicing, LLC obtained servicing rights of the Plaintiff's mortgage, it claimed that the obligation of the Plaintiff was in default. Defendant, Bayview Loan Servicing, LLC, is a "debt collector" as defined by the provisions of R.I.G.L. § 19-14.9-3

("RIFDCPA"). This Court has jurisdiction pursuant to the provisions of R.I.G.L. § 19-14.9-13. The primary business of Bayview Loan Servicing, LLC is the collection of debts.

67.     Bayview Loan Servicing, LLC since November 4, 2016 has committed several violations of the RIFDCPA and is liable to the Plaintiff for compensatory damages, statutory damages, and attorney fees and costs for violations.

68.     Bayview Loan Servicing, LLC has used multiple unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiffs.

69.     Bayview Loan Servicing, LLC has violated the RIFDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt.  Bayview Loan Servicing, LLC made false representations regarding the character, amount and legal status of the debt.

70.     On or after August 7, , Bayview Loan Servicing, LLC retained the law firm of Michienzie & Sawin, LLC  to collect an alleged debt allegedly due to the entity on whose behalf Bayview Loan Servicing, LLC was collecting by seeking to foreclose on Plaintiff's property.

71.     Bayview Loan Servicing, LLC, through this law firm, made various false representations, which were made regarding the character, amount and legal status of the Plaintiff's debt.  These false assertions were made as follows:

        a.     It falsely stated on a number of occasions, after November 13, 2017  through its own documentation and that of its attorneys the amount secured by the mortgage loan.

        c.     It has falsely stated the amount claimed to be due in past due interest and charges, in every statement and document referencing the amount due sent to the Plaintiff since that date.

72.     These statements were all false and were violations of R.I.G.L. § 19-14.9-7 (b)(1) for the reasons as alleged previously in this complaint.

73.    The amount stated for his arrearage in the August 3, 2017 letter was not an accurate statement of the amount necessary to cure the delinquency on his mortgage loan.

74.    This amount included $5728.29 in a corporate advance balance. However this amount included attorney fees for an attempted foreclosure sale noticed by Bayview's attorney after October 8, 2014 and before July 8, 2015 without having sent Plaintiff a Notice of Mediation as required by the provisions of R.I.G.L. 34-27-3.2.  These fees were charged to his mortgage loan account as follows:

January 9, 2015 for a total of $833.61
May 5, 2015                    $300.00

75.    Bayview also included in the corporate advance balance legal fees for foreclosures without a default letter sent pursuant to the terms of his mortgage and without ever having sent an acceleration letter in the following amounts:

October 3, 2013         $300.00
April 29, 2014          $300.00
April 30, 2013          $410.00
April 1, 2013           $300.00
January 15, 2013        $325.00
September 3, 2015:       $485.00
November 3, 2015:       $300.00
December 28, 2015       $300.00
February 4, 2016        $2012.18
May 25, 2016            $300.00
July 12, 2016           $862.00
July 14, 2016           $325.00
November 15, 2016       $300.00

76.    Bayview Loan Servicing, LLC claiming to act on behalf of the owner of the mortgage loan, through its attorney, also violated the provisions of R.I.G.L. §19-14.9-7 (b)(e) by threatening to take an action that could not be legally taken, namely that it could exercise the statutory power of sale and conduct a foreclosure sale of the plaintiff's home.

16

77.     In addition, Bayview Loan Servicing, LLC  could not take this action because there had never been a valid default letter nor any acceleration letter  sent to Plaintiff by the lender, servicer or any party acting on its behalf.

78.     The mortgage loan has never been accelerated.

79.     Bayview Loan Servicing, LLC also threatened to conduct a foreclosure sale on November 13 2017 despite not having the legal authority to do so due to the failure of the lender to send the Plaintiff a default letter pursuant to the terms of the mortgage nor send an acceleration letter and due to the fact that  owned neither the Plaintiff's mortgage or note.

80.     Each action of Bayview Loan Servicing, LLC described above constitutes a separate violation of the RIFDCPA for which Bayview Loan Servicing, LLC is liable.

81.     All the actions alleged in this complaint were designed to compel the Plaintiff to pay monies to Bayview Loan Servicing, LLC, through its attorney, on behalf of the alleged owner of the note and mortgage under the false threat of foreclosure of their home unless they made such a payment to Bayview Loan Servicing, LLC, through its attorney on behalf of the  entity, which owned the note.

82.     The Plaintiff  has incurred  actual damages as a result of the violations of the RIFDCPA:

> a.      Plaintiff has incurred costs for gasoline to visit her attorney on several occasions, driving to her  attorney's office for round trips totaling more than  26 miles.  The IRS standard mileage allowance provides for .56 per mile.

> b.      Plaintiff  has used his cell phone to call and receive calls from her attorney. These calls are charged to his pursuant to his cell phone usage and monthly fees.

> c.      Plaintiff  has used electricity to recharge his cell phone for calls when he spoke with his attorney.

     d.     He has incurred attorney fees and costs for the prosecution of the Superior Court action.

     e.     He has suffered emotional damages for embarrassment and humiliation by the advertising of a foreclosure of his home on several occasions.

     f.     His mortgage loan account has been charged unreasonable fees and costs for uncorroborated and unreasonable and unnecessary property inspections and improper legal fees and costs.

83.     As a result of the above described acts of Bayview Loan Servicing, LLC, it is liable to the Plaintiff for actual damages, statutory damages, attorney's fees and costs.

WHEREFORE, Plaintiff demands that Judgment be entered against

the Defendant Bayview Loan Servicing, LLC, for the following relief:

     A.     Judgment against Bayview Loan Servicing, LLC for actual damages, and statutory damages of $1,000.00 for each violation of the RIFDCPA.

     B.     Judgment against Bayview Loan Servicing, LLC for legal fees and costs for the prosecution of this action.

     C.     For all other just and proper relief.

JAMES VIERA
By his attorney,

November 12, 2017

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

# COUNT IV

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN LENDING ACT BY BANK OF NEW YORK MELLON AS TRUSTEE'S FAILURE TO SEND THE PLAINTIFF A MONTHLY MORTGAGE STATEMENT EACH MONTH PURSUANT TO THE PROVISIONS OF 12 C.F.R. 1026.41 AND 15 U.S.C. 1638**

84.    Paragraphs 1-83 are incorporated by reference.

85.    This is an action for damages brought by the Plaintiff, who is a consumer,  for Bank of New York Mellon's violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA").

86.    Specifically, Plaintiff seeks the remedies provided in TILA for Defendants' failure to send the Plaintiff monthly mortgage statements as required by 15 U.S.C. §§ 1638 and 12 C.F.R. 1026.41 respectively.

87.    This Court has jurisdiction pursuant to 15 U.S.C. §1640 to provide private remedies for failure to respond to provide a borrower monthly statements.  15 U.S.C. § 1640 provides for statutory damages of the type alleged in this Complaint to a range of not less than $400.00 nor greater than $4,000.00.  Jurisdiction is further conferred on this Court by 15 U.S.C. §1640(e).

87.    The Defendant, Bayview Loan Servicing is a limited liability company services residential mortgage loans.  It is the servicer of the mortgage loan, which is the subject of this complaint

88.    Bank of New York Mellon as Trustee claims to be the owner of the mortgage note and mortgage loan.

89.     The mortgage loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1).

90.    Plaintiff has not been sent a monthly statement in compliance with 12 C.F.R. 1026.41 since November 13, 2017.

91.     Pursuant to 12 C.F.R. 1026.41, the loan servicer on behalf of the creditor was required to send the Plaintiff a monthly mortgage statement that provides the following information:

(**d**) *Content and layout of the periodic statement.*  The periodic statement required by this section shall include:

(**1**) *Amount due.*  Grouped together in close proximity to each other and located at the top of the first page of the statement:

(**i**)  The payment due date;

(**ii**)  The amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received; and

(**iii**)  The amount due, shown more prominently than other disclosures on the page and, if the transaction has multiple payment options, the amount due under each of the payment options.

(**2**) *Explanation of amount due.*  The following items, grouped together in close proximity to each other and located on the first page of the statement:

(**i**)  The monthly payment amount, including a breakdown showing how much, if any, will be applied to principal, interest, and escrow and, if a mortgage loan has multiple payment options, a breakdown of each of the payment options along with information on whether the principal balance will increase, decrease, or stay the same for each option listed;

(**ii**)  The total sum of any fees or charges imposed since the last statement; and

(**iii**)  Any payment amount past due.

(**3**) *Past Payment Breakdown.*  The following items, grouped together in close proximity to each other and located on the first page of the statement:

(**i**)  The total of all payments received since the last statement, including a breakdown showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, sent to any suspense or unapplied funds account; and

(**ii**)  The total of all payments received since the beginning of the current calendar year, including a breakdown of that total showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, currently held in any suspense or unapplied funds account.

(**4**) *Transaction activity.*  A list of all the transaction activity that occurred since the last statement. For purposes of this paragraph (d)(4), *transaction activity* means any activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, a brief description of the transaction, and the amount of the transaction for each activity on the list.

(**5**)  *Partial payment information.*  If a statement reflects a partial payment that was placed in a suspense or unapplied funds account, information explaining what must be done for the funds to be applied. The information must be on the front page of the statement or, alternatively, may be included on a separate page enclosed with the periodic statement or in a separate letter.

(**6**)  *Contact information.*  A toll-free telephone number and, if applicable, an electronic mailing address that may be used by the consumer to obtain information about the consumer's account, located on the front page of the statement.

(**7**)  *Account information.*  The following information:

(**i**)  The amount of the outstanding principal balance;

(**ii**)  The current interest rate in effect for the mortgage loan;

(**iii**)  The date after which the interest rate may next change;

(**iv**)  The existence of any prepayment penalty, as defined in§ 1026.32(b)(6)(i), that may be charged;

(**v**)  The Web site to access either the Bureau list or the HUD list of homeownership counselors and counseling organizations and the HUD toll-free telephone number to access contact information for homeownership counselors or counseling organizations; and

(**8**)  *Delinquency information.*  If the consumer is more than 45 days delinquent, the following items, grouped together in close proximity to each other and located on the first page of the statement or, alternatively, on a separate page enclosed with the periodic statement or in a separate letter:

(**i**)  The date on which the consumer became delinquent;

(**ii**)  A notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured;

(**iii**)  An account history showing, for the previous six months or the period since the last time the account was current, whichever is shorter, the amount remaining past due from each billing cycle or, if any such payment was fully paid, the date on which it was credited as fully paid;

(**iv**)  A notice indicating any loss mitigation program to which the consumer has agreed, if applicable;

(**v**)  A notice of whether the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, if applicable;

(**vi**)  The total payment amount needed to bring the account current; and

(**vii**)  A reference to the homeownership counselor information disclosed pursuant to paragraph (d)(7)(v) of this section.

92.    None of these statements have been sent to the Plaintiff, inconformity with Regulation Z since November 13, 2016.

93.    The Plaintiff has been charged improper fees and costs relating to foreclosure attempts on his property, which have been charged to his mortgage loan account.

94.    These fees were not properly charged to the mortgage loan account due.

95.    Each monthly statement since November 13, 2017 included $5728.29 in a corporate advance balance.  However this amount included attorney fees for an attempted foreclosure sale noticed by Bayview's attorney after October 8, 2014 and before July 8, 2015 without having sent Plaintiff a Notice of Mediation as required by the provisions of R.I.G.L. 34-27-3.2.  These fees were charged to his mortgage loan account as follows:

January 9, 2015 for a total of $833.61
May 5, 2015                $300.00

96.    Bayview also included in each of the periodic monthly statements since November 15, 2017 charges for the corporate advance balance legal fees for foreclosures without a default letter sent pursuant to the terms of his mortgage and without ever having sent an acceleration letter in the following amounts:

October 3, 2013          $300.00
April 29, 2014           $300.00
April 30, 2013           $410.00
April 1, 2013            $300.00
January 15, 2013         $325.00
September 3, 2015:        $485.00
November 3, 2015:        $300.00
December 28, 2015        $300.00
February 4, 2016         $2012.18
May 25, 2016             $300.00
July 12, 2016            $862.00
July 14, 2016            $325.00
November 15, 2016        $300.00

97.    In addition, every month since it obtained servicing in October 2012, Bayview has charged his mortgage loan account $14.00 for what it reserves to as property preservation fees, despite the fact that Plaintiff has been seeking a loan modification since 2012 and it knows that he lives in the property.

98.    These fees were neither reasonable nor necessary and there has been no verification that these charges were actually paid to the unnamed vendor which charged these fees

99.    These charges have been included in all statements sent to the consumer by Bayview Loan Servicing.

100.    As a result of this failure to comply with 12 C.F.R. 1026.41 and TILA, Defendant, Bank of New York Mellon as Trustee is liable for actual damages and statutory damages of up to $4,000.00 for each of the statements, which were either not sent to the Plaintiff since July 13, 2015 or were not accurate and not in conformity with 12 C.F.R. 1026.41 and TILA.

101.    The Plaintiff has incurred actual damages, costs and legal fees in regard to this action:

a.    He has incurred costs for gasoline to visit their attorney on at least five occasions, driving to his attorney's office for a round trip totaling  26 miles.  The IRS standard mileage allowance provides for .56 per mile.

b.    He has incurred postage costs, copying costs and stationary and envelope costs for transmission to the Defendant.

c.    His mortgage loan account has been charged additional fees and costs, which raise the cost of any possible loan modification.

d.    He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with their attorney provides that they will be responsible for legal fees expenses incurred in regard to this action.

WHERFORE, Plaintiff demands Judgment against Bank of New York

Mellon  as Trustee for the Certificateholders of CWALT, Inc., Alternative

Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-

86CB for statutory damages of at least $4,000.00, for each failure to send a

monthly mortgage statement in conformity with TILA since November 13,

2017 plus actual damages, plus attorney fees and costs and all other just and

proper relief.


|  |  |
|---|---|
| November 12, 2017 | JAMES VIERA<br>By his Attorney |

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com


Plaintiff demands a Trial by Jury