# Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

**JAMES VIERA**

    **VS**

**BANK OF NEW YORK MELLON AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE
LOAN TRUST 2005-86CB MORTGAGE PASS-THROUGH
CERFTIFICATES, SERIES 2005-86CB,
BAYVIEW LOAN SERVICING, LLC**

BNY MELLON

APR - 3 2018

LEGAL DEPARTMENT

## COMPLAINT

Plaintiff, by his attorney, complains of Defendants as follows:

1.    Plaintiff is a resident of State of Rhode Island with an address of 15 Cedar Avenue, East Providence, Rhode Island. He resides at and owns this real estate, which is a one family residential home. His ex-wife, Jane Viera also is an owner of this property. She no longer lives in Rhode Island. She was not a signer of the mortgage note, but was only a mortgagor and was not a borrower.

2.    Mortgage Electronic Registration Systems, Inc., ("MERS"), is a Delaware Corporation.

3.    Plaintiff executed a mortgage to MERS as Nominee for Shamrock Financial Corporation on December 8, 2005. A copy is attached as Exhibit A.

4.    Defendant, Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB ("Bank of New York Mellon") claims to be the owner of his mortgage.

5.    Bayview Loan Servicing, LLC ("Bayview") is a limited liability company, organized pursuant to the laws of Delaware. It is a debt collector and claims to be a loan servicer for his mortgage. At the time it

1

began servicing this mortgage loan, my loan was delinquent and Bayview treated it as if it were in default.

6.     Michienzie & Sawin, LLC ("M&S") has scheduled a foreclosure sale for Plaintiff's home on November 13, 2017 at 2:00 PM. Plaintiff has not received a Notice of Default, which was mailed to him in the form required by the terms of his mortgage.

7.     Neither BONY nor Bayview have sent Plaintif a notice pursuant to the provisions of paragraph 22 of his mortgage.  Plaintiff has never been sent a  default notice, which complied with the terms of his mortgage  from the owner of the note or mortgage.

8.     Before an acceleration of the loan was declared, the Lender, its assignee  or a servicer acting on behalf of the owner of the mortgage was required to send Plaintiff a notice to his home address which specified:

a.     the default;

b.     the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

c.     that failure to cure the default on or before the date specified in the Notice may result in the acceleration and sale of Plaintiffs' home

d.     the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

9.     Paragraph 22 of his mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

**Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The  notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that  failure to cure the default on or before the date specified in the notice  may result**

2

in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a Court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall  mail a copy of a notice of sale to Borrower as provided in Section 15.  Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

10.    Plaintiff has never received an acceleration notice as required by the terms of his mortgage. No acceleration notice has been sent to him.

11.    The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage. There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above.

12    Any alleged exercise of the statutory power of sale to him was defective because a default notice and an acceleration notice were never sent as required by paragraph 22 of the mortgage.

13.    The purported default notice sent to Plaintiff ("Exhibit B") was dated August 3, 2017 and sent to him by certified mail. This letter did not comply with the terms of the mortgage.

14.     This letter stated "Failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property."   However it also stated:

If the default, together with additional payments that subsequently become due is not cured by 09/07/2017, BLS will take steps to terminate your ownership interest in the property by a foreclosure proceeding or other action to seize the property.

15.     This notice also did not state a specific amount due to be cured by September 7, 2017. Instead it stated:

It is possible that after payments of the amounts detailed above there may be other fees still due and owing, including  but not limited to other fees, escrow advances or corporate advances that BLS paid on your behalf or advanced to your account.

16.     The notice also did state that the Plaintiff had the right to bring a court action to assert the non-existence of a default or any other defense of borrower to acceleration and sale.

17.     However this notice also stated that:

If you wish to dispute the delinquency , or if you dispute the calculation of amount of the delinquency and reinstatement amount, you may contact us by calling 1-800-771-0299.

18.     It also limited the rights of the Plaintiff in this notice by stating:

Unless you notify us within thirty days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid.

19.     The mortgage loan has not been accelerated by either defendant.

20.     Exhibit C is a copy of the October 16, 2017 periodic monthly mortgage statement sent to Plaintiff.

21.   This statement indicates that his mortgage loan has not been accelerated.

22.   At no time after August 4, 2017 did Plaintiff receive any letter which indicated that the mortgage loan was accelerated.

23.   Bayview never indicated that it was sending the default letter on behalf of the alleged owner of the mortgage loan.

24.   On October 5, 2017 Bayview mailed Plaintiff's attorney Exhibit D. This letter indicates that the owner of the mortgage loan was Bank of America 807-95, The Bank of New York Mellon, 101 Barclay Street, 8W, New York, NY 10286.

25.   In this same letter, Bayview claims to have sent Plaintiff a copy of his promissory note, which is attached as Exhibit E. This note has been only endorsed by Shamrock Financial Corporation to Countrywide Bank, N.A. There is no additional endorsement.

26.   Countrywide Bank, National Association was renamed Countrywide Bank, FSB on March 12, 2007 and was acquired by Bank of America, National Association on April 4, 2007.

27.   A copy of the institution search for the Federal Deposit Insurance Corporation is attached as Exhibit F.

28.   The amount stated for his arrearage was not an accurate statement of the amount necessary to cure the delinquency on his mortgage loan.

29.   This amount included $5728.29 in a corporate advance balance. However this amount included attorney fees for an attempted foreclosure sale noticed by Bayview's attorney after October 8, 2014 and before July 8, 2015 without having sent Plaintiff a Notice of Mediation as required by the provisions of R.I.G.L. 34-27-3.2. These fees were charged to his mortgage loan account as follows:

January 9, 2015 for a total of $833.61
May 5, 2015              $300.00

30.    Bayview also included in the corporate advance balance legal fees for foreclosures without a default letter sent pursuant to the terms of his mortgage and without ever having sent an acceleration letter in the following amounts:

| | |
|---|---|
| October 3, 2013 | $300.00 |
| April 29, 2014 | $300.00 |
| April 30, 2013 | $410.00 |
| April 1, 2013 | $300.00 |
| January 15, 2013 | $325.00 |
| September 3, 2015: | $485.00 |
| November 3, 2015: | $300.00 |
| December 28, 2015 | $300.00 |
| February 4, 2016 | $2012.18 |
| May 25, 2016 | $300.00 |
| July 12, 2016 | $862.00 |
| July 14, 2016 | $325.00 |
| November 15, 2016 | $300.00 |

31.    No default letter was sent pursuant to the terms of the mortgage prior to any of these foreclosure charges.  In addition prior to these attempts to exercise the statutory power of sale, his loan has never been accelerated.

32.    In addition, every month since it obtained servicing in October 2012, Bayview has charged his mortgage loan account $14.00 for what it reserves to as property preservation fees, despite the fact that Plaintiff has been seeking a loan modification since 2012 and it knows that he lives in the property.

33.    These fees were neither reasonable nor necessary.

34.    On September 27, 2017, Plaintiff transmitted a facially complete loss mitigation application for a loan modification to Bayview Loan Servicing.  It received this application on September 27, 2017.

35.    Despite this receipt, it began advertising of a foreclosure sale after it received his application for loss mitigation.

36.    Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater

6

hardship in the absence of an order, which will not disserve the public
interest if imposed.

36.     The failure of the Defendants to comply with the terms of the
mortgage renders void any attempt to commence the alleged foreclosure by
Statutory Power of Sale, without having the statutory ability to conduct this
foreclosure.

37.     Plaintiff lives in this property as his principal residence.

138     These facts demonstrate that Plaintiff has a substantial
likelihood of success.  Likewise a foreclosure of his property by a party not
entitled to foreclose on the property will cause him  irreparable harm, which
hardship is greater than any hardship, which may be claimed by defendants.

40.     Such relief sought by Plaintiff will not disserve the public
interest if imposed.

41.     Plaintiff has a substantial likelihood of success in the pending
action, would otherwise suffer irreparable harm and can claim the greater
hardship in the absence of an order, which will not disserve the public
interest if imposed. The failure of the Defendant to comply with  the terms
of the mortgage renders void any attempt to commence the alleged
foreclosure by Statutory Power of Sale, without having the  statutory ability.
This demonstrates that Plaintiff has a substantial likelihood of success.
Likewise a foreclosure of his property by a party not entitled to foreclose on
the property, because it has no ownership  of the mortgage will cause
Plaintiff irreparable harm, which hardship is greater than any hardship,
which may be claimed by defendants. Such relief sought by Plaintiff will not
disserve the public interest if imposed.

41.     Plaintiff is requesting that this Court Temporarily Restrain and
Enjoin and Preliminarily Restrain and Enjoin Bank of New York Mellon as
Trustee and Bayview Loan Servicing, LLC or any entity acting on their
behalf from continuing any advertising of this foreclosure or taking any
further action in regard to this foreclosure and from conducting a foreclosure
sale on November 13, 2017 or  at any time until further Order of this Court.

42.    The attorney for the Defendants, Michienzie & Sawin, LLC ("M&S") has been notified of this action and has been sent copies of the documents filed in this case, including this Motion.

## COUNT I
## BREACH OF CONTRACT

43.    Paragraphs 1- 41 are incorporated by reference.

44.    Paragraph 22 of the mortgage provides that the Lender must send a notice of default which contains specific language as a condition precedent to acceleration and sale.

44.    Plaintiff never received any default letter, which included language required by the terms of the mortgage from the lender or owner of the note or the mortgage or an agent indicating that it was acting on behalf of the lender or owner of the note and the mortgage.

45.    Nor was an acceleration letter ever sent to the Plaintiff.

46.    Due to this failure to comply with the terms of the mortgage, no entity was contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiff's property.

47.    This action constituted a breach of contract, resulting in damages to the Plaintiff, who hired an attorney to commence this case.

48.    Pursuant to Rhode Island Law and the terms of the mortgage and the Statutory Power of Sale can only be exercised if a mortgagee accelerates the mortgage after a proper default notice pursuant to the terms of the mortgage.

WHEREFORE, Plaintiff demands the following relief:

   a.    Damages against Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB and Bayview Loan

8

Servicing, LLC for failure to comply with the terms of the mortgage.

b.  Damages against Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB and Bayview Loan Servicing, LLC for legal fees and actual damages arising from the breach of contract.

c.  Legal fees from Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB and Bayview Loan Servicing, LLC pursuant to the provisions of R.I.G.L § 9-1-45.

d.  Damages for charges to her mortgage loan account which has been charged fees and costs which were not permitted without a valid  default notice and an acceleration notice.

e.  All other just and proper relief.

JAMES VIERA
By his Attorney

November 12, 2017

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT II

## VIOLATION OF THE COVENANT OF GOOD FAITH AND DEALING

49.  Paragraphs 1-48 are incorporated by reference.

9

50.    The mortgage contract between Plaintiff and the mortgagee and its successor or assignee contained an implied covenant of good faith and dealing between the parties so that the contractual obligation of the contract might be achieved.

51.    The mortgage contract in paragraph 22 incorporates the Rhode Island Statutory Power of Sale.

52.    The Statutory Power of Sale could only be invoked by sending Plaintiff the following documents:

    a.    A default letter pursuant to the term of the mortgage was required to be sent by the lender to the mortgagor at their home address

    b.    A subsequent acceleration letter from the lender to the Plaintiff was required to be sent after a default letter.

    c.    A notice of sale from the lender

53.    Bank of New York Mellon as Trustee and Bayview Loan Servicing, LLC violated the covenant of good faith and dealing by scheduling a foreclosure sale in violation of the terms of the mortgage by seeking to exercise the statutory power of sale without the lender having first sent a default notice to the Plaintiff, which contained language required by the terms of the mortgage.

54.    They also breached the covenant of good faith and dealing by not sending a subsequent acceleration notice on behalf of the lender pursuant to the terms of the mortgage.

55.    The failure to send a default letter and failure to send an acceleration notice pursuant to the terms of the mortgage were  actions taken contrary to the contractual and statutory obligations of the parties.

56.    As a result, Plaintiff has incurred the following damages:

    a.    Plaintiff has incurred the cost of filing this action in the form of filing fees and service fees, incurred in order to

stop the foreclosure, which was in violation of the terms of the mortgage.

b.    Plaintiff's mortgage loan account has been charged fees and costs which were not permitted without a valid default letter having being sent to her.

c.    Plaintiff has incurred damages for Plaintiff aggravation, humiliation, embarrassment, loss of privacy, strain on personal relationships, loss of enjoyment of life, sleepless nights, worry and anxiety. He has incurred stress with mail advising him that his home will be sold at a public auction.

d.    Plaintiff has incurred attorney fees and costs to obtain an injunction to stop the illegal foreclosure.

e.    Plaintiff has incurred attorney fees and costs for the prosecution of this action.

57.    The conduct of Bank of New York Mellon as Trustee and Bayview Loan Servicing, LLC were willful, wanton and reckless, warranting the imposition of punitive damages. They ignored the clearly stated terms of the mortgage, but instead went forward and sought to exercise the statutory power of sale without a valid default notice having been sent to the Plaintiff.

WHEREFORE, Plaintiff demands the following relief:

a.    Damages against Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB and Bayview Loan Servicing, LLC for failure to comply with the terms of the mortgage.

b.    Damages against Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB and Bayview Loan

Servicing, LLC for legal fees and damages arising from the breach of contract.

c.   Legal fees from Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB and Bayview Loan Servicing, LLC.

d.   Damages for charges to Plaintiff's mortgage loan account which has been charged fees and costs which were not permitted without a valid default notice.

e.   Actual damages attributable to the aggravation, humiliation, embarrassment, loss of privacy, strain on personal relationships, loss of enjoyment of life, sleepless nights, worry and anxiety and stress suffered by the Plaintiff.

f.   Damages for punitive damages

g.   All other just and proper relief.

JAMES VIERA
By his Attorney

November 12, 2017

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

# COUNT III
# INJUNCTIVE RELIEF

58.   Paragraphs 1-57 are incorporated by reference.

59.     Plaintiff will be irreparably harmed if the foreclosure sale on November 13, 2017 occurs and his home is sold.

60.     Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

61.     The failure of the Defendants to comply with paragraph 22 of the mortgage renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability.  This demonstrates that Plaintiff has a substantial likelihood of success.

62.     Likewise a foreclosure of Plaintiff's property by a party not entitled to foreclose on the property will cause Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by Defendants.

63.     Such relief sought by Plaintiff will not disserve the public interest if imposed.

64.     The failure of the Defendant to comply with paragraph 22 of the mortgage renders any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability. This demonstrates that Plaintiff has a substantial likelihood of success. Likewise a foreclosure of Plaintiff's property by a party not entitled to foreclose on the property will cause Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by defendants. Such relief sought by Plaintiff will not disserve the public interest if imposed.

WHEREFORE, Plaintiff demands that this Court:

a.     Grant a Preliminary Injunction Restraining and Enjoining Bayview Loan Servicing, LLC, Bank of New York Mellon as Trustee  for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB or any other entity acting on its behalf from conducting, advertising or continuing a  foreclosure

sale at 15 Cedar Avenue, East Providence, Rhode Island pending a hearing on a Permanent Injunction

b.      Grant a Permanent Injunction enjoining  Bayview Loan Servicing, LLC, Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-86CB, Mortgage Pass-Through Certificates, Series 2005-86CB  or any other entity acting on its behalf from conducting, advertising or continuing a  foreclosure sale at 15 Cedar Avenue, East Providence, Rhode Island until  further Order of this Court.

c.      Award the Plaintiff actual damages and compensatory damages and legal fees and costs against the Defendants for scheduling a foreclosure without complying the  terms of the mortgage

d.      Grant all other just and proper relief.

                                    JAMES VIERA
                                    By  his Attorney


November 12, 2017              /s/ John B. Ennis
                              JOHN B. ENNIS, ESQ. #2135
                              1200 Reservoir Avenue
                              Cranston, Rhode Island 02920
                              (401) 943-9230
                              Jbelaw75@gmail.com


## COUNT IV
## VIOLATION OF THE RHODE ISLAND FAIR DEBT COLLECTION PRACTICES ACT

65.      Paragraphs 1-64 are incorporated by reference.

66.      At the time that Bayview Loan Servicing, LLC obtained servicing rights of the Plaintiff's mortgage, it claimed that the obligation of the Plaintiff was in default. Defendant, Bayview Loan Servicing, LLC, is a "debt collector" as defined by the provisions of R.I.G.L. § 19-14.9-3

# EXHIBIT A

012458          BK 2590 PG 052

114167585

After Recording Return To:
SHAMROCK FINANCIAL CORPORATION
309 TAUNTON AVE
SEEKONK, MASSACHUSETTS 02771
Loan Number: 0500006438



610  116167585  D2  001  001

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

MIN: 1002647-0500006438-9

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated  DECEMBER 8, 2005          , together with all Riders to this document.
(B)  "Borrower" is  JAMES M VIERA AND JANE E VIERA, AS TENANTS BY THE ENTIRETY


Borrower is the mortgagor under this Security Instrument.
(C)  "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the mortgagee under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D)  "Lender" is  SHAMROCK FINANCIAL CORPORATION

Lender is a  RHODE ISLAND CORPORATION                                              organized
and existing under the laws of  RHODE ISLAND
Lender's address is  309 TAUNTON AVE, SEEKONK, MASSACHUSETTS 02771


(E)  "Note" means the promissory note signed by Borrower and dated  DECEMBER 8, 2005
The Note states that Borrower owes Lender  TWO HUNDRED NINETEEN THOUSAND AND 00/100                                    Dollars (U.S. $ 219,000.00          ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JANUARY 1, 2036
(F)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

Borrower Initials: _____  _____  _____  _____  _____  _____

RHODE ISLAND–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        *DocMagic* 800-649-1362
Form 3040 01/01 (rev. 11/02)                          Page 1 of 14                              www.docmagic.com

BK2590PG053

(H)  "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☐ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider  ☐ Biweekly Payment Rider -

(I)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L)  "Escrow Items" means those items that are described in Section 3.
(M)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the
COUNTY of  PROVIDENCE  :
[Type of Recording Jurisdiction]  [Name of Recording Jurisdiction]

Borrower Initials: _____  _____  _____  _____

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS   DocMagic eForms 800-649-1362
Form 3040 01/01 (rev. 11/02)  Page 2 of 14  www.docmagic.com

BK2590PG054

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS
EXHIBIT "A".

which currently has the address of   15 CEDAR AVENUE
                                                    [Street]

EAST PROVIDENCE                    , Rhode Island      02915      ("Property Address"):
         [City]                                       [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security
Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose
and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling
this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject
to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall
pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late
charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due
under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other
instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,
Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in
one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,
treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured
by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other
location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return
any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender
may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights
hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not
obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of
its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds
until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of
time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be

Borrower Initials: _____  _____  _____  _____  _____

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic eForms 800-649-1362
Form 3040 01/01 (Rev. 11/02)                           Page 3 of 14                                       www.docmagic.com

BK2590PG055

applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    Application of Payments or Proceeds.  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    Funds for Escrow Items.  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree

Borrower Initials: _____ _____ _____ _____

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      *DocMagic* *eFerms* 800-649-1362
Form 3040 01/01 (rev. 11/02)                        Page 4 of 14                              www.docmagic.com

RI3040.mtm.4.tem

# EXHIBIT B

 **BAYVIEW®**
LOAN SERVICING

August 3, 2017                                          VIA FIRST CLASS MAIL AND CERTIFIED MAIL/RRR

JAMES M VIERA
15 CEDAR AVE
EAST PROVIDENCE RI 02915



Loan Number:        0000599225
Property Address:   15 CEDAR AVE
                    EAST PROVIDENCE RI 02915

## NOTICE OF DEFAULT AND INTENT TO ACCELERATE

Dear JAMES M VIERA:

This letter is formal notice by Bayview Loan Servicing, LLC (herein as "BLS") that you are in default under the terms of the documents creating and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"), for failure to pay the amounts due.

The loan is due for 08/01/2010 and subsequent payments, plus late charges, fees and costs. As of the date of this notice, the total amount required to cure the default is $148,858.78, which consists of the following:

| | | |
|---|---|---|
| Next Payment Due Date | | 08/01/2010 |
| Total Monthly Payments Due | | $143,130.49 |
| Late Charges | | $0.00 |
| Other Charges: | Uncollected NSF Fees | $0.00 |
| | Other Fees: | $0.00 |
| | Corporate Advance Balance: | $5,728.29 |
| | Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | | **$148,858.78** |

**It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that BLS paid on your behalf or advanced to your account.**

This letter is a formal demand to pay $148,858.78. If the default, together with additional payments that subsequently become due, is not cured by 09/07/2017, BLS will take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the property.

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, BLS offers consumer assistance programs designed to help resolve delinquencies and avoid FORECLOSURE. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternative. If you would like to learn more about these programs, you may contact the Loss Mitigation Department at 1-877-205-9958, 9:00 a.m. - 6:00 p.m., Monday - Friday, Eastern Standard Time. WE ARE VERY INTERESTED IN ASSISTING YOU.

The default above can be cured by payment of the total amount plus any additional payments and fees that become due by 09/07/2017. Failure to cure the default on or before this date may result in acceleration of the sums secured by the Security Instrument and sale of the property. Note that in addition to the regular monthly payments, additional charges, costs and fees may become due during the period between today's date and the date the aforementioned payments are due. This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current default. You may contact our Loan Counseling Department at 1-800-771-0299 to obtain updated payment information.

Please include your loan number and property address with your payment and send to:

> Bayview Loan Servicing, LLC
> 4425 Ponce De Leon Blvd, 5th Floor
> Miami, FL 33146



If you wish to dispute the delinquency, or if you dispute the calculation of amount of the delinquency and reinstatement amount, you may contact us by calling 1-800-771-0299.

You have the right to reinstate the loan after acceleration, and to bring a court action to assert the non-existence of a default or any other defense of borrower to acceleration and sale. Failure to respond to this letter may result in the loss of your property. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address and telephone number.

Unless you notify us within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. Upon your written request within thirty (30) days after the receipt of this letter, we will provide you with the name and address of the original creditor, if the original creditor is different from the current creditor.

You are notified that this default and any other legal action that may occur as a result thereof may be reported to one or more local and national credit reporting agencies by Bayview Loan Servicing.

**Attention Servicemembers and dependents:** The Federal Servicemembers' Civil Relief Act ("SCRA") and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances. If you are currently in the military service, or have been within the last twelve (12) months, AND joined after signing the Note and Security Instrument now in default, please notify BLS immediately. When contacting BLS as to your military service, you must provide positive proof as to your military status. If you do not provide this information, it will be assumed that you are not entitled to protection under the above-mentioned Act.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home. You may contact a government approved housing counseling agency which provides free or low-cost housing counseling. You should consider contacting one of these agencies immediately. These agencies specialize in helping homeowners who are facing financial difficulty. Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance. For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies, please call 1-800-569-4287 or visit http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

You may be eligible for assistance from the Homeownership Preservation Foundation or other foreclosure counseling agency. You may call the following toll-free number to request assistance from the Homeownership Preservation Foundation: 1-888-995-HOPE(4673). If you wish, you may also contact us directly at 1-800-771-0299 and ask to discuss possible options. This matter is very important. Please give it your immediate attention.

Sincerely,

Bayview Loan Servicing, LLC
4425 Ponce De Leon Blvd, 5th Floor
Miami, FL 33146
1-800-771-0299



FEDERAL LAW REQUIRES US TO ADVISE YOU THAT BAYVIEW LOAN SERVICING, LLC IS A DEBT COLLECTOR AND THAT THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO THE AUTOMATIC STAY IN A BANKRUPTCY PROCEEDING, THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT INDEBTEDNESS AS YOUR PERSONAL OBLIGATION. IF YOU ARE REPRESENTED BY AN ATTORNEY, PLEASE PROVIDE US WITH THE ATTORNEY'S NAME, ADDRESS AND TELEPHONE NUMBER.

RESIDENTIAL BREACH LETTER (NON JUDICIAL)

# EXHIBIT B



**BAYVIEW**
LOAN SERVICING

August 3, 2017                                    VIA FIRST CLASS MAIL AND CERTIFIED MAIL/RRR

JAMES M VIERA
15 CEDAR AVE
EAST PROVIDENCE RI 02915



Loan Number:        0000599225
Property Address:   15 CEDAR AVE
                    EAST PROVIDENCE RI 02915

## NOTICE OF DEFAULT AND INTENT TO ACCELERATE

Dear JAMES M VIERA:

This letter is formal notice by Bayview Loan Servicing, LLC (herein as "BLS") that you are in default under the terms of the documents creating and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"), for failure to pay the amounts due.

The loan is due for 08/01/2010 and subsequent payments, plus late charges, fees and costs. As of the date of this notice, the total amount required to cure the default is $148,858.78, which consists of the following:

| | | |
|---|---|---|
| Next Payment Due Date | | 08/01/2010 |
| Total Monthly Payments Due | | $143,130.49 |
| Late Charges | | $0.00 |
| Other Charges: | Uncollected NSF Fees | $0.00 |
| | Other Fees: | $0.00 |
| | Corporate Advance Balance: | $5,728.29 |
| | Unapplied Balance: | ($0.00) |

**TOTAL YOU MUST PAY TO CURE DEFAULT:**          **$148,858.78**

**It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that BLS paid on your behalf or advanced to your account.**

This letter is a formal demand to pay $148,858.78. If the default, together with additional payments that subsequently become due, is not cured by 09/07/2017, BLS will take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the property.

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, BLS offers consumer assistance programs designed to help resolve delinquencies and avoid FORECLOSURE. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternative. If you would like to learn more about these programs, you may contact the Loss Mitigation Department at 1-877-205-9958, 9:00 a.m. - 6:00 p.m., Monday - Friday, Eastern Standard Time. WE ARE VERY INTERESTED IN ASSISTING YOU.

RESIDENTIAL BREACH LETTER (NON JUDICIAL)
Page 1 of 3

# EXHIBIT C



**BAYVIEW**
LOAN SERVICING

Bayview Loan Servicing, LLC
P.O. Box 650091
Dallas, TX 75265-0091
www.bayviewloanservicing.com

1.877.251.0990

Statement Date: 10/16/17

| | |
|---|---|
| Account Number | 599225 |
| Payment Date | 08/01/10 |
| Total Amount | $155,184.31 |

489

James M Viera
C/O John B Ennis, Esq
1200 Reservoir Ave
Cranston, RI 02920-6012

## Bankruptcy Notice

Our records reflect that you are presently a debtor in an active bankruptcy case or you previously received a discharge in bankruptcy. This statement is being sent to you for informational purposes only. It should not be construed as an attempt to collect a debt against you personally. If you want to stop receiving statements, write to us.

### Account Information

| | |
|---|---|
| Outstanding Principal Balance †‡ | $218,760.18 |
| Deferred Amount | $0.00 |
| Interest Rate | 6.5% |
| Prepayment Penalty | N |
| Unapplied Funds | $0.00 |

### Explanation of Payment Amount

| | |
|---|---|
| Principal | $499.55 |
| Interest | $1,131.37 |
| Escrow (Taxes and Insurance) | $466.49 |
| Regular Monthly Payment | $2,097.51 |
| Total Fees & Charges* | $5,761.29 |
| Unpaid Past Payments** | $147,325.51 |
| Total Amount*** | $155,184.31 |

‡Payments will be applied in order that they become due (oldest first) unless bankruptcy or other court ordered payment plan is in place.
*Total Fees and Charges are comprised of Recoverable Corporate Advances, Late Fees and NSF Fees assessed.
**Unpaid Past Payments is the sum of the balances for unpaid Principal, Interest and Escrow.
***Total amount may not include recoverable fees not yet charged to the account, and may not include unapplied funds/totals not yet applied to the account.

### Transaction Activity (09/16/17 to 10/16/17)

| Date | Description | DEBITS | CREDITS |
|---|---|---|---|
| 10/10 | Property Inspection | 11.00 | |

### Past Payments Breakdown

| | Paid Last Bill | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (for Taxes & Insurance) | $0.00 | $0.00 |
| Fees & Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied)‡‡ | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |

### Account History

You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure – the loss of your home. As of 10/16/17 you are 2633 days delinquent on your mortgage.

**Recent Account History:**
Payment due: 05/01/17: Unpaid balance of $2,036.96
Payment due: 06/01/17: Unpaid balance of $2,036.96
Payment due: 07/01/17: Unpaid balance of $2,036.96
Payment due: 08/01/17: Unpaid balance of $2,097.51
Payment due: 09/01/17: Unpaid balance of $2,097.51
Payment due: 10/01/17: Unpaid balance of $2,097.51
Current payment due 08/01/10: $2,097.51
Total: $155,184.31 due.

If you are experiencing Financial Difficulty: See Back for information about mortgage counseling or assistance.

### Important Messages

‡‡ Partial Payments: Any partial payment that you make is not applied to your mortgage payment, but instead is held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

†This is your Principal Balance only, not the amount required to pay your loan in full. Please contact Customer Service for your exact payoff balance. In the event you are in default or foreclosure, you must contact 1.877.251.0990 for payoff information.

Your Point of Contact is LISA MCBRIDE and can be reached on 844-369-3405.

Your loan is an interest only loan. please note monthly payments may not reduce the principal balance.

BAYVIEW LOAN SERVICING, LLC
PO BOX 650091
DALLAS, TX 75265-0091

Please include the loan number on your check. If we cannot clearly associate the check with a single loan, it may delay or prohibit us from crediting your account.

Borrower JAMES M VIERA
Loan Number 599225
Total Amount $155,184.31

If you are currently a party in a bankruptcy case and you choose to make a voluntary payment, detach and return bottom remittance portion with your payment. Make checks payable to Bayview Loan Servicing.

Payment Due 08/01/10

BAYVIEW LOAN SERVICING, LLC
PO BOX 650091
DALLAS, TX 75265-0091

| Please indicate additional funds. Excess funds received by BLS without explicit application instructions, will be posted based on BLS internal payment hierarchy, which is driven by your loan documents and/or applicable law. | Additional Principal | $ | |
|---|---|---|---|
| | Additional Escrow | $ | |
| | Other | $ | |
| | Total Amount Sent (Please do not send cash) | $ | |

☐ Check here if your address/telephone number has changed and fill out form on reverse side.

Please do not write below this line.       Servicing Code: MSP

Make check payable to Bayview Loan Servicing.

## How to contact us

The below mailing address must be used for all Error Notices and Information Requests:

Bayview Loan Servicing, LLC
Customer Service Department
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL 33146

**Customer Service**
Mon – Fri 8:00 am to 9:00 pm ET
Saturday 8:00 am to 5:00 pm ET
Telephone: 1.877.251.0990
Fax: 248.831.5680

**Customer Relations**
Mon – Fri 8:00 am to 12:00 pm ET
Saturday 8:00 am to 5:00 pm ET
Telephone: 1.888.328.7191

**Mail payments to:**
Bayview Loan Servicing, LLC
PO Box 650091
Dallas, TX 75265-0091

**Overnight Payment or Certified Payoff Funds:**
Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL 33146

**Payoff Request:**
Bayview Loan Servicing
Payoff Department
4425 Ponce De Leon Blvd., 5th Floor
Coral Gables, FL 33146
Fax: 305.644.8102

**Homeowner's Insurance Inquiries**
Mon-Fri 8:00 AM – 7:00 PM ET
Telephone: 877-926-4419
Fax: 248-824-7880

**Real Estate Tax Bills:**
Bayview Loan Servicing, LLC
Tax Department
P.O. Box 331409
Miami, FL 33233-1409
Fax: 305.644.8104

**Insurance or Binder:**
Bayview Loan Servicing, LLC, its successors and/or assigns
PO Box 5953
Troy, MI 48007-5953
Telephone: 877.926.4419

For hearing/speech impaired accessibility (TTY):
Working Hours Here
Toll Free 877-676-1865
DID #305-646-6440

### Additional Payment Methods

Please include your Bayview loan number on all remittance

**\*Western Union Quick Collect:**   Code City: BFTG Code State: FL
[Locate the agent nearest you by calling 1.800.526.6313, or visiting www.westernunion.com]

**\*MoneyGram:**   Receive Code: 13910
1-800-555-3133; 7 days a week, 24 hours a day

**\*Wire:**   JP Morgan Chase New York, NY
ABA #: 021000021 Account No.: 4474508 7

**Certified Funds Overnight Mailing Address:**
Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL 33146

**\*\*By Phone:**   1.877.251.0990

*Fees may be imposed by money transmitter.*

*\*\*Fees may be imposed by depository; to the extent a fee is imposed, the fee will be $0.50.*

For your convenience, you may have your payment automatically debited each month from the checking or savings account of your choice. To participate in Auto Pay, Bayview's automatic draft program, visit www.bayviewloanservicing.com/auto Pay.

### Payment Handling

We reserve the right to electronically collect your eligible payment checks, all at presentment and any additional presentment, from the bank account on which the check is drawn. Our receipt of your payment check is authorization for us to collect the amount of the check electronically, or if needed by draft drawn against the bank account. Checks will be collected electronically by sending the check amount along with the check, routing and account numbers to your bank. Your bank account may be debited as early as the same day we receive your payment. The original check will be destroyed and an image maintained for our records.

### Housing Counselor Information

If you would like counseling or assistance, for a list of homeowners/housing counseling organizations in your area, you can contact the following: U.S. Department of Housing and Urban Development (HUD), go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

## National Schedule of Fees

| Fee | Amount |
|---|---|
| **Appraisal** An expense charged to the loan to determine the value of the property, which includes an interior inspection of the property. | $400.00 - $475.00, unless prohibited by state law. |
| **Assumption** Charge for the work involved with processing a new buyer that is assuming the terms of an existing loan. | $0.00 – 1% of the UPB at $250, whichever is greater. |
| **Bankruptcy Fees and Costs** | $0 to $5,000 |
| **BPO** An expense charged to the loan in which a broker's price opinion will be used to determine the value of a property on a delinquent loan. | $0.00 to $150.00, unless prohibited by state law. |
| **Foreclosure Fees and Costs** | $0 to $5,000 |
| **Late Charge** Assessed for payments received after the due date and expiration of any applicable grace period per the loan documents. | As stated in the loan documents, subject to state law requirements. |
| **Litigation Fees and Costs** | Varies depending on the circumstances and is not an eye charged to the customer's account, but is $0 to $50,000. |
| **Non-Sufficient Funds Fee** An expense assessed on payments/checks received that are not honored due to insufficient funds. | $0 to $40, or maximum permitted by state law. |
| **Partial Release** Charge for the processing the release of a portion of the mortgaged property. | Loan balance $300,000 or less = $0; loan balance greater than $300,000 less than $750,000 = $300; loan balance greater than $750,000 = $1,000 |
| **Pay-by-Phone, Web and IVR Payment Fee** | $0.00 - $0.50, subject to state law requirements. |
| **Pre-Foreclosure Notice Registration Fee** | $0 to $75, subject to state law requirements. |
| **Priority Processing (Overnight Delivery)** Fee charged if customer requests expedited service. | $0 - $15 |
| **Property Inspection** | $10 - $15 |
| **Property Preservation Fee** An expense charged to the loan to ensure that the condition or appearance of the property are maintained satisfactorily. | $0 to $2,500 and $0 to $150 for grass rates. |
| **Title Search** An expense charged to the loan for a detailed examination of the National records concerning the property. | $0 to $500 |

**Other Fees Charged (And fees not included above)**
Currently, no fees are assessed for the following: Amortization Schedule, Deed of Trust Copy, Document Copy, Loan History, Release Recording-Reassential, Subordination and Verification of Mortgage for Third Party Requests. A prepayment penalty may be assessed against your loan under the terms of the Note.

The above contains a list of common servicing fees. You may incur additional fees if, for example, your loan becomes delinquent or is subject to litigation (e.g. condemnation proceeding). Such fees may include, but are not limited to, court costs and attorney fees. These fees will vary with the circumstances of the case and the nature of the work performed. Bayview Loan Servicing, LLC NMLS #2469

### Mortgage Scams Relief Programs

Be cautious of any notice you receive that advise you that you have been approved for a loan modification or trial plan. These may be deceptive scams from persons pretending to be us. For your protection, please verify any such information received by contacting your assigned Asset Manager or Customer Service immediately to confirm that any offer or decision comes from us.

### Mortgage Loan Scam Alert

Beware of home loan rescue scams. Facing the possibility of not being able to make your mortgage payments is an unsettling time. Unfortunately, con artists often attempt to take advantage of vulnerable homeowners and may try deceptive scams where they pretend to represent Bayview Loan Servicing, LLC ("Bayview")and allege to have your best interest in mind. You should know that loss mitigation options and counseling do not require fees when working directly with Bayview or a HUD approved housing counselor. For your protection, if you are unsure if the person communicating with you about a modification or other document agreement or requiring you to make payments is from Bayview or a legitimate counseling resource, please contact the Customer Relations Department at 1.877.251.0990 or at customerservice@bayviewloanservicing.com and tell us about your situation.

### Know your Rights

The FTC's Mortgage Assistance Relief Services (MARS) Rule is establish to protect distressed homeowners from mortgage relief scams that have sprung up during the mortgage crisis. Bogus operations falsely claim that, for a fee, they will negotiate with the consumer's mortgage lender or servicer to obtain a loan modification, a short sale, or other relief from foreclosure.

### Credit Reporting

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

© 2011 Bayview Loan Servicing, LLC all rights reserved

---

**Has any of your contact information changed?**
If so, please complete the form and check the box on the front of the coupon.

Mailing Address: _____

City: _____   State: _____   Zip: _____

Home Phone: ( ___ ) _____   Business Phone: ( ___ ) _____

Customer Name:
Please Print _____   Email Address: _____

Customer Name:
Please Print _____   Email Address: _____

Customer Signature: _____   Customer Signature: _____

Date: _____   Date: _____

Please be advised that Bayview Loan Servicing, LLC ("Bayview") may consent the use of automated technology to place calls, pre-recorded messages and text messages to any wireless numbers provided by you in records to the servicing of your mortgage loan. This is not a condition for Bayview to service your account and you may revoke your

**BAYVIEW®**
LOAN SERVICING

Bayview Loan Servicing, LLC
P.O. Box 650091
Dallas, TX 75265-0091
www.bayviewloanservicing.com

Mortgage Statement
Statement Date: 10/16/17

| Account Number | 599225 |
|---|---|
| Payment Date | 08/01/10 |
| Total Amount | $155,184.31 |

**Important Messages**

Servicemembers Civil Relief Act The Service members Civil Relief Act (SCRA) may offer protection or relief to members of the military who have been called to active duty. If either you have been called to active duty, or you are the spouse, registered domestic partner, partner in a civil union, or financial dependent of a person who has been called to active duty, and you haven't yet made us aware of your status, please contact our Customer Relations Department toll-free at (855) 813-7143, Monday – Friday 8am – 5pm ET. As your loan servicer, we are here to help you understand your options.

# EXHIBIT D

**BAYVIEW®**
LOAN SERVICING

Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL 33146

October 5, 2017

John B Ennis
Attorney at Law
1200 Reservoir Ave
Craston, RI 02920

Subject: QWR

Loan Number:      599225-Viera
BLS Case Number:  10000047930

Dear Mr. Ennis:

This letter responds to the correspondence to Bayview Loan Servicing LP ("Bayview") regarding customers residential mortgage loan, account number 599225.

A review of the account indicates that the account is currently in an active foreclosure action effective August 30, 2016. In response to the inquiries received, we have provided the information and documentation described below.

### RESPA ERROR RESOLUTION

#### Origination / Underwriting Error

Under the Real Estate Settlement Procedures Act ("RESPA"), a servicer is required to respond to a notice of error that relates to the servicing of a borrower's mortgage loan. You identify an error relating to the origination of your mortgage loan. Bayview is not legally obligated to correct or investigate errors unrelated to the servicing of a mortgage loan.

### RESPA INFORMATION REQUEST

#### Request for Current Owner of the Loan

You requested information about the current owner of your loan. The current owner of the loan is:

Bank of America 807-95
The Bank of New York Mellon
101 Barclay Street, 8W
New York, NY 10286

The following mailing address must be used for all Error Notices & Information Requests:
Bayview Loan Servicing, LLC, Customer Support, 4425 Ponce de Leon Boulevard, 5th Floor, Coral Gables, Fl 33146

**BAYVIEW®**
LOAN SERVICING

Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL 33146

*Responses to Remaining Information Requests*

Enclosed please find the following in response to your remaining requests:

- Account Activity Statement: it provides a detailed accounting of all transactions and their effective due dates for your review.
- Assignment of Mortgage
- Note
- Mortgage
- HUD
- Notice of Transfer (s)
- Notice of Default and Intent to Accelerate

We have enclosed all supporting documentation used to complete the review on your account. You are entitled to request additional documentation regarding your inquiry. If you wish to do so, please submit your request to our Customer Support Department via fax at 305-631-5660. Alternatively, you may submit your request via email to customerservice@bayviewloanservicing.com or via regular mail to the mailing address referenced below.

If you have any further questions, please contact our Customer Service Department at our toll free at (800) 457-5105, Monday-Friday, 8:00 am to 9:00 pm ET. You may also contact the Lisa McBride at toll free 1-844-369-3405, ext 2931, Monday-Friday, 8:00 am to 9:00 pm ET.

Thank you for the opportunity to respond to your concerns.

Sincerely,

Ivany Puello
Case Manager
Customer Support Department
Bayview Loan Servicing, LLC

Enclosure

The Following mailing address must be used for all Error Notices & Information Requests:
Bayview Loan Servicing, LLC, Customer Support, 4425 Ponce de Leon Boulevard, 5th Floor, Coral Gables, Fl 33146

# EXHIBIT D

**BAYVIEW®**
LOAN SERVICING

Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL 33146

October 5, 2017

John B Ennis
Attorney at Law
1200 Reservoir Ave
Craston, RI 02920

Subject: QWR

Loan Number:      599225-Viera
BLS Case Number:  10000047930

Dear Mr. Ennis:

This letter responds to the correspondence to Bayview Loan Servicing LP ("Bayview") regarding customers residential mortgage loan, account number 599225.

A review of the account indicates that the account is currently in an active foreclosure action effective August 30, 2016. In response to the inquiries received, we have provided the information and documentation described below.

RESPA ERROR RESOLUTION

*Origination / Underwriting Error*

Under the Real Estate Settlement Procedures Act ("RESPA"), a servicer is required to respond to a notice of error that relates to the servicing of a borrower's mortgage loan. You identify an error relating to the origination of your mortgage loan. Bayview is not legally obligated to correct or investigate errors unrelated to the servicing of a mortgage loan.

RESPA INFORMATION REQUEST

*Request for Current Owner of the Loan*

You requested information about the current owner of your loan. The current owner of the loan is:

Bank of America 807-95
The Bank of New York Mellon
101 Barclay Street, 8W
New York, NY 10286

The Following mailing address must be used for all Error Notices & Information Requests:
Bayview Loan Servicing, LLC, Customer Support, 4425 Ponce de Leon Boulevard, 5th Floor, Coral Gables, Fl 33146

**BAYVIEW®**
LOAN SERVICING

Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL 33146

**Responses to Remaining Information Requests**

Enclosed please find the following in response to your remaining requests:

- **Account Activity Statement:** it provides a detailed accounting of all transactions and their effective due dates for your review.
- **Assignment of Mortgage**
- **Note**
- **Mortgage**
- **HUD**
- **Notice of Transfer (s)**
- **Notice of Default and Intent to Accelerate**

We have enclosed all supporting documentation used to complete the review on your account. You are entitled to request additional documentation regarding your inquiry. If you wish to do so, please submit your request to our Customer Support Department via fax at 305-631-5660. Alternatively, you may submit your request via email to customerservice@bayviewloanservicing.com or via regular mail to the mailing address referenced below.

If you have any further questions, please contact our Customer Service Department at our toll free at (800) 457-5105, Monday-Friday, 8:00 am to 9:00 pm ET. You may also contact the Lisa McBride at toll free 1-844-369-3405, ext 2931, Monday-Friday, 8:00 am to 9:00 pm ET.

Thank you for the opportunity to respond to your concerns.

Sincerely,

Ivany Puello
Case Manager
Customer Support Department
Bayview Loan Servicing, LLC

Enclosure

The Following mailing address must be used for all Error Notices & Information Requests:
Bayview Loan Servicing, LLC, Customer Support, 4425 Ponce de Leon Boulevard, 5th Floor, Coral Gables, Fl 33146

# EXHIBIT E

1161675585

MIN: 1002547-0500006438-9                    Loan Number: 0500006438

# INTEREST ONLY FIXED RATE NOTE

DECEMBER 8, 2005                SEEKONK                    MASSACHUSETTS
[Date]                          [City]                       [State]

15 CEDAR AVENUE, EAST PROVIDENCE , RHODE ISLAND 02915
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 219,000.00        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is SHAMROCK FINANCIAL CORPORATION, A RHODE ISLAND CORPORATION
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of    6.500 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.   PAYMENTS**
(A) Time and Place of
I will make a payment every month. This payment will be for interest only for the first    120        months, and then will consist of principal and interest.
I will make my monthly payment on the    1st        day of each month beginning on FEBRUARY 1, 2006
I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on JANUARY 1, 2036
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 309 TAUNTON AVE, SEEKONK, MASSACHUSETTS 02771

or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 1,186.25        for the first 120        months of this Note, and thereafter will be in the amount of U.S. $ 1,632.81        . The Note Holder will notify me prior to the date of change in monthly payment.

**4.   BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under the Note.
I may make a full prepayment or partial prepayments without paying a prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment amount, before applying my prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

**5.   LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

|||||| 610  116167585  NTE 001  001

INTEREST ONLY Fixed Rate Note
FS-3166 (0805)                                        Page 1 of 3

6.   **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000 % of my overdue payment. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.   **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.   **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.   **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ 12-8-05 _____ (Seal)
JAMES M VIERA                                   -Borrower

_____ (Seal)
                                                -Borrower

_____ (Seal)
                                                -Borrower

_____ (Seal)
                                                -Borrower

[Sign Original Only]

INTEREST ONLY Fixed Rate Note
FE-3166 (0506)                        Page 3 of 3

# ALLONGE TO NOTE

LOAN NUMBER: 0500006438

LOAN AMOUNT: $219,000.00

PROPERTY ADDRESS: 15 CEDAR AVENUE, EAST PROVIDENCE, RHODE ISLAND 02915

ALLONGE TO NOTE DATED DECEMBER 8, 2005

IN FAVOR OF SHAMROCK FINANCIAL CORPORATION


AND EXECUTED BY JAMES M VIERA


PAY TO THE ORDER OF

COUNTRYWIDE BANK, N.A.

WITHOUT RECOURSE SHAMROCK FINANCIAL CORPORATION


BY _____

TITLE:   Rod Correia, Sr Vice President

ALLONGE TO NOTE
08/08/04

DocMagic ⟨Reserve⟩ 800-649-1362
www.docmagic.com

Allo.rw.1.tem

# EXHIBIT F

# Countrywide Bank, National Association (FDIC # 33143)

## Inactive as of April 27, 2009

### Merged or acquired without government assistance

**Data as of:** November 8, 2017

Countrywide Bank, National Association is no longer doing business under that name because it has been merged or acquired without government assistance. See the successor institution, Bank of America, National Association (FDIC #: 3510)

**Headquarters:**
FDIC Certificate#: 33143
6465 Greenwood Plaza #200
Centennial, CO 80111
Arapahoe County

**Established:** August 30, 1990
**Insured:** August 30, 1990
**Bank Charter Class:** Savings Association

**Contact the FDIC about:** Countrywide Bank, National Association or Bank of America, National Association

| History | Locations | Identifications | Financials | Other Names / Websites |

Showing 1 to 14 of 14 entries (filtered from 19 total entries)

| Date | Event |
| --- | --- |
| 8/30/1990 | Institution established. Original name:Treasury Bank (33143) |
| 5/1/2001 | Reorganized. |
| 5/17/2001 | Changed name to Effinity Bank, National Association (33143) |
| 5/17/2001 | Changed institution class to INSURED COMMERCIAL BANK, NATIONAL MEMBER FRS |
| 8/6/2001 | Changed name to Treasury Bank, National Association (33143) |
| 8/21/2001 | Moved bank headquarters from WASHINGTON, DC to ALEXANDRIA, VA |
| 6/6/2005 | Changed name to Countrywide Bank, National Association (33143) |
| 3/12/2007 | Changed name to Countrywide Bank, FSB (33143) |
| 3/12/2007 | Changed primary regulatory agency from COMPTROLLER OF THE CURRENCY to OFFICE OF THRIFT SUPERVISION |
| 3/12/2007 | Changed organization type to STOCK SAVINGS BANK |
| 3/12/2007 | Changed institution class to OCC SUPERVISED SAVINGS BANKS |
| 1/16/2009 | Maintained operations with government open bank assistance. |
| 2/4/2009 | Moved bank headquarters from ALEXANDRIA, VA to CENTENNIAL, CO |
| 4/27/2009 | Merged into and subsequently operated as part of Bank of America, National Association (3510) in CHARLOTTE, NC |

Information as of: November 9, 2017