**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**JAMES VIERA**

      **VS**                           **CA. No. 2017-cv-581**

**BANK OF NEW YORK MELLON AS TRUSTEE FOR THE**
**CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE**
**LOAN TRUST 2005-86CB MORTGAGE PASS-THROUGH**
**CERFTIFICATES, SERIES 2005-86CB, BAYVIEW LOAN**
**SERVICING, LLC**

### MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO MOTION TO DISMISS

This matter is before the Court on Defendant's Motion to Dismiss for failure to serve Bayview Loan Servicing, LLC within ninety days of filing of the complaint. This matter is before the Court on Defendants' Motion to Dismiss without prejudice for failure to serve the Defendants within 90 days of the filing of this complaint. The complaint against the Defendants was filed on November 12, 2017. Plaintiff sought a temporary restraining Order to preclude Defendants from foreclosing on the Plaintiff's property. On November 13, 2017, Defendants were represented by Attorney Amy Magher, who appeared for them before this Court, opposing the Motion. Prior to the hearing, the complaint, all exhibits and the Motion were emailed to Attorney Magher on behalf of the Defendants, who even though they were not officially served had actual notice of the Motion. Notice of the complaint and Motion and all exhibits were sent to attorneysAmy Magher

1

were mailed on November 12, 2017 with copies of the filed documents also sent on November 12, 2017.

The case of Ryan v. Krause 11-cv-37 (D.Rhode Island, July 17, 2012) considered good cause as having been shown when the action could be barred by the statute of limitations: The Advisory Committee describes what is meant by Rule 4(m)'s phrase, "good cause": Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, Ryan involved a 17 month delay in service by pro se litigants who sued Rhode Island Superior Court and Supreme Court Judges, claiming that these Judges were agents of Co-Defendant Diocese of Providence.   This case involves no prejudice to the Defendants, as they were fully aware of the action, to which their attorney effectively entered, by appearing at the hearing on November 13, 2017 for the temporary restraining Order, which was granted. Actual service was made on Bayview on March 14, 2018, in which the deadline to filed an answer was April 4, 2018, a deadline also missed by Bayview Loan Services, LLC.Ironically, despite the actual service of Bayview on March 14, 2018, in which the deadline to respond to the complaint was April 4, 2018, Plaintiff did not seek to default the Defendant, who had actual notice of this matter for 122 days.

FRCP 4(m) states: (m) TIME LIMIT FOR SERVICE. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A). The Plaintiff has demonstrated good cause under the totality of the circumstances. Unlike *Ryan,* the Plaintiff's service under Rhode Island law was made on the Defendants' attorneys in this matter, although actual service occurred 32 days after the deadline.. There was not prejudice to the Defendants and based on the possible statute of limitations defense, the Plaintiff has demonstrated good cause. The Plaintiff provided actual notice of the complaint to the Defendants immediately.

This case is comparable to the Rhode Island Supreme Court case of *Sundlun v Sundlun* ,234 A. 2d 358, 361 (R.I., 1967). In that case the Court interpreted a similar Rule 4 case in which the Defendant received actual notice of a divorce case, participated in the hearing and then sought to dismiss for failure to serve the Defendant, alleging lack of jurisdiction. The

Supreme Court did not agree stating: It is well-established practice in this

state that an acknowledgment of service on the citation or the general

appearance of a defendant is equivalent to service. As the court said in

*Hawkins v. Boyden*, 25 R.I. 181, 183, 55 A. 324, 325:

> Acknowledgment of service is submission to the jurisdiction of the
> court, and as effective as the service of process by an officer, unless
> otherwise prescribed by statute. In most States there is statutory provision. In
> this State we have no statute upon the subject, except as to nonresidents.
> Gen. Laws cap. 240, § 20. It has, however, been the uniform practice of the
> court to recognize due service and jurisdiction by an acknowledgment
> thereof, or even by an appearance without objection.

Rule 4 specifies that service of process may be effected pursuant to

state law stating:

(e) SERVING AN INDIVIDUAL WITHIN A JUDICIAL DISTRICT

OF THE UNITED STATES. Unless federal law provides otherwise, an

individual—other than a minor, an incompetent person, or a person whose

waiver has been filed— may be served in a judicial district of the United

States by: (1) following state law for serving a summons in an action

brought in courts of general jurisdiction in the state where the district court

is located or where service is made; or (2) doing any of the following: (A)

delivering a copy of the summons and of the complaint to the individual

personally; (B) leaving a copy of each at the individual's dwelling or usual

place of abode with someone of suitable age and discretion who resides

there; or (C) delivering a copy of each to an agent authorized by

appointment or by law to receive service of process.

Thus the Federal Rules of Civil Procedure look to state law for service

of process implementation. The *Sundlun* case suggests that once Defendants'

attorney participated in the TRO hearing on November 13, 2018, the

Defendants had effectively been served under Rhode Island law. To suggest

that this Court lacks jurisdiction over a party, which opposed the Motion for

a Temporary Restraining Order and which entered its appearance, is

disingenuous. The Plaintiff inadvertently was late in effectuating proof of

service and assumed that service was not an issue. Good cause has been

shown for the 31 day delay due to the totality of circumstances in this case.

For this in this matter. reason, the motion to dismiss without prejudice

should be denied.

THE LAW OF THE CASE DOCTRINE PRECLUDES THE MOTION TO
DISMISS BASED ON THE FAILURE TO SEND AN ACCELERATION
NOTICE

Plaintiff, by his attorney, has objected to the Motion to Dismiss in part

based on the transcript of the hearing in this matter on November 17, 2018

due to the Law of the case doctrine. The Plaintiff has previously requested

that this Court take Judicial Notice of the fact that the Defendants' attorney

participated in the Temporary Restraining Order hearing on November 13,

2017. A copy of the transcript is attached. In addition, all the pleadings in

this case were provided to the attorney for the Defendants, prior to the

hearing on that Motion.

The First Circuit has stated the parameters of The Law of the Case

Doctrine in the case of *Negron-Almeda v. Santiago* , 579 F. 3d 45 (1ˢᵗ Cir.,

2009). In the Court held:


Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Wallace,* 573 F.3d 82, 87-88 (1st Cir.2009) (internal quotation marks and citation omitted). We have sometimes said that law of the case has "two branches" or two forms. *See, e.g., United States v. Moran,* 393 F.3d 1, 7 (1st Cir.2004); *Ellis v. United States,* 313 F.3d 636, 646 (1st Cir.2002). The first branch, called the "mandate rule," "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case." *Moran,* 393 F.3d at 7. The second branch "contemplates that a legal decision made at one stage of a criminal or 51*51 civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court." *Id.; accord Ellis,* 313 F.3d at 646. For example, this branch binds successor appellate panels in a second appeal in the same case unless certain circumstances justify reconsideration. *Wallace,* 573 F.3d at 87-89. . .  Courts should therefore be "loathe" to disturb prior decisions in a case. *Christianson,* 486 U.S. at 817, 108 S.Ct. 2166. Nevertheless, courts may reopen a matter previously decided on "a showing of exceptional circumstances-a threshold which, in turn, demands that the proponent accomplish one of three things: 52*52 show that controlling legal authority has changed dramatically; proffer significant new evidence, not earlier obtainable in the exercise of due diligence; or convince the court that a blatant error in the prior decision will, if uncorrected, result in a serious injustice." *Bell,* 988 F.2d at 251. *Santiago*, pp. 51-2.

In this case, Judge McConnell held that the Defendants had not

complied with the terms of the mortgage by not mailing the Plaintiff an

acceleration letter after a default letter in compliance with the terms of the

mortgage. The Defendants made the same argument in the Temporary

Restraining Order which they do not, which argument was rejected by Judge

McConnell:

So let me stop everyone and tell you where we are. I'm going to grant the

temporary restraining order. I think all of the elements needed for an

injunction are present. On the issue which we've been discussing for the last

10 or 15 minutes about likelihood of success, while my review of the

material is very cursory just because of the timing of this, the foreclosure

that's about to take place in a couple hours and we just got this this morning,

but from my past experience with a docket of 1200 mortgage cases, my

understanding was that a notice that acceleration of the mortgage was

required. At least paragraph 19 of the mortgage appears to require that the

mortgagor receive notice of that acceleration in   order to be able to

effectuate their rights to reinstate after acceleration. It doesn't appear that

there's been any notice of acceleration to the mortgagee in this case. And,

therefore, it may not be ripe for foreclosure. And irreparable harm I believe

would come to the plaintiff in this matter should a foreclosure be allowed to

take place and in effect a standstill will not enure to anyone's great prejudice

conditioning the equities of the case. So I'm going to grant the TRO and

send this case back to Judge Smith.

Thus the Defendants merely seek to raise the same argument, which was

rejected by Judge McConnell and remains the law of the case.

THE RIGHT TO THE VIABILITY OF THE TILA CLAIM HAS
BEEN REVIVED BY THE AMENDMENT OF REGULATION Z ON
APRIL 19, 2018.

On April 19, 2018, Regulation Z was amended to clarify that mortgage

statements had to be mailed to consumers who were either in Bankruptcy or

have been discharged in bankruptcy.  15 U.S.C. § 1638 had never provided

any exception to allow a loan servicer acting on behalf of the owner of the

mortgage loan an exemption from mailing a periodic statement to consumers

in bankruptcy or who were discharged in bankruptcy.  12 C.F.R. 1026.41,

which is Regulation Z, was enacted in order to implement the provisions of

TILA.  This Regulation provided an exemption to provide any statements for

consumers in bankruptcy, stating:

A servicer is exempt from the requirements of this section for a mortgage

loan while the consumer is a debtor in bankruptcy under Title 11 of the

United States Code.

Plaintiff was not a consumer in bankruptcy pursuant to title 11 of the United States Code at any time in 2016 or thereafter.  The interpretation of Regulation Z, suggested that there was an exemption for loan servicers, which allowed a loan servicer an exemption from sending a statement to a consumer who had been discharged in bankruptcy to the extent that the consumer did not reaffirm the obligation of the mortgage loan.  This interpretation of Regulation was in derogation of the statute and the regulation, and did not implement the actual language of the statute and the regulation.  Bayview  recognized that there was no exception created under the statute or the regulation . Instead, Bayview continued to mail statements to the consumer, through his attorney.

## THE TILA COUNT IS ADEQUATELY PLEADED

The Defendants' conduct led to an additional cause of action for the failure of the alleged mortgagee to send an accurate monthly statement going back one year prior to the filing of the amended complaint. The charging of improper fees for the foreclosure on the mortgage loan account, as well as other improper fees charged to the mortgage loan account, such as monthly property inspection fees provide factual support for the violation of the Fair Debt Collection Practices Act in falsely stating the amount of the debt by the loan servicer in each of the monthly statements filed after August, 2015 in

violation of 15 U.S.C. 1692e.  The improper balances and charges on each of

the statements since the statement sent after August 26, 2015 also constitute

violations of the Truth in Lending Act. Thus Plaintiff alleges that he has

not been sent a monthly statement in compliance with 12 C.F.R. §  1026.41

or 15 U.S.C. § 1638 for one year prior to the filing of the amended

complaint. This is also actionable against the Defendant.

  The Court in *Dixon v. Ocwen Loan Servicing*, ND, TX, 3-16-cv-

2094(October 24, 2016) recently denied a Motion to Dismiss based on a

similar allegation:

  [TILA] has separate disclosure requirements for "open-end" and
  "closed-end" credit transactions. The requirements for the latter are more
  onerous (compare 15 U.S.C. § 1637 with *id.* § 1638)."), *cert. denied,* 525
  U.S. 963 (1998). Therefore, § 1026.5(b)(2)(i) is inapplicable and the
  defendants' argument fails.

  The sole basis for the Motion to Dismiss the TILA count for failure to

provide accurate periodic statements is the assertion that the Defendants did

not have to send a monthly statement because the Plaintiff had been

discharged in Bankruptcy. However a reading of the statute and the

regulation indicate no such restriction. The sole restriction in the regulation

is that a statement does not need to be sent while the consumer is a debtor in

bankruptcy:

5.     CONSUMERS IN BANKRUPTCY.

A servicer is exempt from the requirements of this section for a mortgage
loan while the consumer is a debtor in bankruptcy under Title 11 of the
United States Code.

 Since the

Defendant was not in bankruptcy in 2016 or 2017, thus this exception did

not apply.  However the Defendant requests the opportunity to amend his

complaint due to the amendment of the statute, which would result in his

being able to replead this Count at least from April 19, 2018.

Plaintiff also requests the opportunity to file an amended complaint

based on the *Spokeo* argument.   The first appellate FDCPA decision

addressing constitutional standing after Spokeo is the Eleventh Circuit's

unpublished decision in Church v. Accretive Health, Inc., 2016 WL 3611543

(11th Cir. July 6, 2016). The court held that the complaint, which alleged a

failure to give the consumer the information required by sections 1692e(11)

and 1692g, sufficiently alleged a concrete injury that met Spokeo's

standards:

The invasion of Church's right to receive the disclosures is not hypothetical

or uncertain; Church did not receive information to which she alleges she

was entitled. While this injury may not have resulted in tangible economic or

physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete. See Spokeo, Inc., 578 U.S. at ---, 136 S. Ct. at 1549; Havens Realty Corp., 455 U.S. at 373. Rather, this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA. Accordingly, Church has sufficiently alleged that she suffered a concrete injury, and thus, satisfies the injury-in-fact requirement.

In *Papetti v. Does 1-25*, 2017 WL 2304227 (2d Cir. May 26, 2017), also unpublished, takes a similarly strong position—that the violation of FDCPA protections, at least those found in sections 1962e and 1692g, is a concrete injury in and of itself:

The purpose of the FDCPA is, among other things, to protect debtors from "abusive debt collection practices by debt collectors." Section 1692g furthers that purpose by requiring a debt collector who solicits payment from a consumer to provide that consumer with "a detailed validation notice," which allows a consumer to confirm that he owes the debt sought by the collector before paying it. And, similarly, Section 1692e protects a consumer's ability to fully avail himself of his legal rights by prohibiting debt collectors from deceiving or misleading debtors in the course of collecting a debt. Thus, the FDCPA violations alleged by Papetti, taken as true, "entail the concrete injury necessary for standing."

In *Sayles v. Advanced Recover System, Inc.,* 865 F.3d 246 (5th Cir. 2017 The 5th Circuit held that a consumer who alleged that a collector failed to report a disputed debt as disputed had Article III standing. The consumer had not alleged any actual damages. Noting the Supreme Court's holding in

*Spokeo* that standing can be established where a statutory violation creates the risk of real harm, the Fifth Circuit held that this section 1692e(8) violation "exposed Sayles to a real risk of financial harm caused by an inaccurate credit rating."

The Fourth Circuit addressed FDCPA standing in two unpublished decisions, Moore v. Blibaum & Associates, P.A., 2017 WL 3049521 (4th Cir. July 19, 2017), and the very similar case Ben-Davies v. Blibaum & Assocs., P.A., 2017 WL 2378920 (4th Cir. June 1, 2017). In Moore the plaintiff alleged that the collector demanded payment of an inflated amount because it had applied an improper interest rate.

The Fourth Circuit held that this was not a bare procedural violation, divorced from any concrete harm. It noted that the plaintiff had alleged that she had suffered emotional distress, anger, and frustration as a consequence of the FDCPA violations. It therefore vacated the district court decision, which had dismissed the FDCPA claim for lack of standing, and remanded the case for further proceedings. In a footnote it stated that neither a settlement offer made to the plaintiff nor her non-payment on the state court judgment were factors that should be considered in determining whether she had standing.

In *Demarais v. Gurstel Chargo, P.A.*, --- F.3d ---, 2017 WL 3707437

(8th Cir. Aug. 29, 2017). The court held that a consumer had standing to

assert FDCPA claims based on two wrongful acts by a collection firm.

First, the firm filed a collection action seeking interest to which it was not

entitled. It also scheduled the case for trial without having any evidence to

present, on the assumption that the consumer would not appear and that it

would be able to obtain a default judgment. When the consumer appeared it

asked for a continuance.

The consumer alleged that these actions amounted to an attempt to collect a

debt not owed in violation of sections 1692e(2) and 1692f(1), and an

improper threat to take action that the collector could not and did not intend

to take. The court held the consumer's allegations that he had to retain an

attorney and serve discovery requests and that he spent time to defend

against the meritless claim amounted to concrete injuries. It also held that

the collector's false representations about the amount of the debt caused a

concrete injury because it created "risks of mental distress traditionally

recognized in unjustifiable-litigation torts and that Congress judged

sufficient for standing to sue."

The second wrongful act was that, after dismissing the collection action with

prejudice, the firm served discovery requests on the consumer, falsely

stating that responses were due in thirty days, which the consumer alleged was also an attempt to collect a debt not owed. The consumer did not allege any tangible harm resulting from this communication, but the court held that being subjected to attempts to collect debts not owed has a close relationship to the harm made actionable by the common law torts of malicious prosecution, wrongful use of civil proceedings, and abuse of process. It also held that Congress had created a statutory right to be free from attempts to collect debts not owed, and that violations created the risk of mental distress, a harm that Congress identified when enacting the FDCPA.

The RIFDCPA claim is attached by the Defendants for reasons previously cited. In view of the previous arguments raised in this memorandum, the Plaintiff requests the opportunity to amend his complaint to clarify issues of damages and liability under the RIFDCA and the FDCPA. Such amendments will not be futile.

JAMES VIERA

By his Attorney

July 2, 2018

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## CERTIFICATE OF SERVICE

I certify that I emailed a copy of this Memorandum of Law to the Attorneys for the Defendants on July 2, 2018:

Amy Magher